**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**LITTLE ROCK DIVISION**

**STEVE AULT**                                                                                    **PLAINTIFF**

**v.**                                              **Case No. 4:12-cv-00228-KGB**

**SAM BAKER, INDIVIDUALLY**
**AND IN HIS OFFICIAL CAPACITY, AND**
**SHERIFF GERALD ROBINSON,**
**INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY**                         **DEFENDANTS**

<u>**OPINION AND ORDER**</u>

Plaintiff Steve Ault filed suit pursuant to 42 U.S.C. § 1983 and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101 *et seq.*, against defendants Lieutenant Sam Baker and Sheriff Gerald Robinson in their individual and official capacities.  Mr. Ault alleges violations of his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

Before the Court are defendants' motion to set aside default (Dkt. No. 13) and defendants' motion to continue, reschedule, or cancel damages hearing (Dkt. No. 14).  On November 8, 2012, the Court heard argument regarding the pending motions, and both motions were taken under advisement.  The Court is now prepared to make a ruling on those motions. The Court finds that Lieutenant Baker and Sheriff Robinson are in default.  Defendants' motion to set aside default is denied (Dkt. No. 13).  Defendants' motion to continue, reschedule, or cancel damages hearing is denied in part and granted in part (Dkt. No. 14).

**I.       PROCEDURAL BACKGROUND**

On April 16, 2012, Mr. Ault filed his complaint (Dkt. No. 1).  On May 2, 2012, and May 4, 2012, John McNeil, the process server acting on behalf of Action Process Service, served both defendants.  Mr. McNeil is also a deputy sheriff with the Jefferson County Sheriff's Department

and was on duty at the time he served defendants (Dkt. No. 13).  On May 16, 2012, Mr. Ault filed two affidavits of service of summons and the complaint on separate defendants Lieutenant Baker and Sheriff Robinson (Dkt. Nos. 4, 5).  On June 21, 2012, Mr. Ault filed two motions for default judgment against defendants (Dkt. Nos. 7, 8).  On September 7, 2012, the Court entered an Order referring the motions for default judgment to the Clerk of the Court for consideration (Dkt. No. 7).  On September 7, 2012, the Clerk entered default (Dkt. Nos. 10, 11).

On October 3, 2012, the Court set a hearing on the motions for default judgment for November 8, 2012 (Dkt. No. 12).  On October 18, 2012, defendants filed a motion to set aside the default (Dkt. No. 13) and a motion to continue, reschedule, or cancel the damages hearing (Dkt. No. 14).  On October 31, 2012, the Court entered an Order stating it would not proceed to the damages hearing originally scheduled for November 8, 2012, but instead, it would hear the issues raised in defendants' motions (Dkt. No. 17).  After the hearing, defendants' motions were taken under advisement by the Court.

## II.    DEFAULT JUDGMENT

A "default" occurs when a defendant fails to answer or respond to a complaint, and an "entry of default" is what the clerk of the court enters when it is established that a defendant is in default.  *Roberts v. Kevmar Capital Corp.*, No. 4:11cv00681 BRW, 2012 WL 1193133 (E.D. Ark. April 10, 2012).  The entry of default is a procedural step in obtaining a default judgment; it is not determinative of any rights.  *Id.*  Pursuant to Federal Rule of Civil Procedure 8(b)(6), "[a]n allegation – other than one relating to the amount of damages  – is admitted if a responsive pleading is required and the allegation is not denied."  However, Federal Rule of Civil Procedure 55(c) states a court "may set aside an entry of default for good cause."  The burden is on the defendant to establish good cause.  *Stephenson v. El-Batawi*, 524 F.3d 907, 914 (8th Cir. 2008).

To determine whether there is "good cause" to set aside a default judgment, the Eighth Circuit considers: "(1) whether the conduct of the defaulting party was blameworthy or culpable; (2) whether the defaulting party had a meritorious defense; and (3) whether the other party would be prejudiced if the default were excused." *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (8th Cir. 1998)*. See also Forsythe v. Hales*, 255 F.3d 487, 490 (8th Cir. 2001); *Winston v. Evans*, No. 5:08cv00204 JMM-HDY, 2009 WL 792466 (E.D. Ark. Mar. 23, 2009).

### A.      Blameworthy or Culpable Conduct

The Court's analysis of whether to set aside the default begins with consideration of Lieutenant Baker's culpability for failure to make a timely response to the complaint. *See Mackie v. U.S. Mfg., Inc*., 219 F.R.D. 639, 641 (N.D. Iowa 2004) (beginning the analysis by considering culpability). In *Sullivan*, the defendant delayed filing an answer to the complaint even after being warned of the consequences. The defendant had received notice of a hearing and a copy of the entry of default, yet he did not respond with a motion to set aside the default for over three weeks. *Sullivan & Associates, LLC v. Holladay*, No. 3:09cv00079 JLH, 2010 WL 582790 (E.D. Ark. Feb. 16, 2010). Judge Holmes determined that this failure to respond constituted more than a "marginal failure" to meet the pleading requirements. *Id.* Judge Holmes observed that "[t]he Eighth Circuit has rarely, if ever, excused 'contumacious or intentional delay or disregard for deadlines and procedural rules,' but has often granted relief for 'marginal failures where there were meritorious defenses and an absence of prejudice.'" *Sullivan*, 2010 WL 582790, at *2 (quoting *Johnson*, 140 F.3d at 784).

Like the defendant in *Sullivan*, here Lieutenant Baker and Sheriff Robinson do not deny receipt of the complaint, as it was served on them by a fellow officer, Deputy Sheriff McNeil. In their motions to set aside, Lieutenant Baker states he did not understand the nature of the

3

document he was handed and that he mistakenly believed that Mr. Ault filed a citizen's complaint against him. Sheriff Robinson claims he does not recall being handed any documents, but he does not contest the affidavit filed by his deputy (Dkt. No. 13, ¶¶ 4, 5).

Lieutenant Baker and Sheriff Robinson received notice of the entry of default on September 11, 2012. Lieutenant Baker and Sheriff Robinson claim this was the first time they were fully aware that a lawsuit had been filed against them and that default had been entered. (*Id.* ¶ 8). However, even after Lieutenant Baker and Sheriff Robinson received a copy of the entry of default, they did not respond by filing a motion to set aside the default for over five weeks. The Court entered its Order setting a hearing on October 3, 2012, yet Lieutenant Baker and Sheriff Robinson waited until October 18, 2012, to file their motion to set aside the default judgment. Based on these facts, Lieutenant Baker and Sheriff Robinson took over four months to respond to the lawsuit, and they only did so by filing a motion to set aside. Lieutenant Baker and Sheriff Robinson still have not filed an answer or attempted to respond to the allegations in the complaint. The Court finds Lieutenant Baker's and Sheriff Robinson's culpability for failure to respond constitutes more than a "marginal failure" to meet the pleading requirements.

### B.    Meritorious Defense

A meritorious defense is one that would permit a finding for the defaulting party. *Sullivan,* 2010 WL 582790, at *3 (citing *Johnson,* 140 F.3d at 785). Courts must consider "whether there is some possibility that the outcome. . . after a full trial will be contrary to the result achieved by the default." *Id.* (citing *Stephenson,* 524 F.3d at 914). In order for the court to set aside the entry of default, the court must have before it more than just mere allegations that a defense exists, the defaulting party must show cause for why the entry should be set aside. *Id.* "The underlying concern is. . . whether there is some possibility that the outcome. . . after a full trial will be contrary to the result achieved by the default." *Stephenson*, 524 F.3d at 914, (citing

*Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988) (per curiam) (quoting 10 Charles Alan Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2697 (2d ed. 1983)).  In *Fink,* the court determined that even though defendants raised two affirmative defenses in their answer, "bald allegation[s]. . . without the support of facts underlying the defense, will not sustain the burden of the defaulting party to show cause [for] why the entry of default should be set aside; the trial court must have before it more than mere allegations that a defense exists."  *Fink v. Swisshelm*, 182 F.R.D. 630, 633 (D. Kan. 1998) (followed by *Stephenson,* 524 F.3d at 914).  In *Winston,* Judge Moody applied "the more lenient standard for setting aside a default" even though the defendant's defenses were not clear at the time. *Winston,* at *1.  However, in both *Fink* and *Winston*, the defendants had at the very least filed an answer, even though it was not timely filed, denying the plaintiff's allegations. *Id.*  To date, Lieutenant Baker and Sheriff Robinson have failed to file an answer to the complaint and have failed to show cause as to why the entry of default should be set aside.

Moreover, Lieutenant Baker and Sheriff Robinson failed to present a meritorious defense. In their motions to set aside, they contend that they wish to "present valid defenses to the claims made by the Plaintiff in this suit" (Dkt. No. 13, ¶ 9), and that they "believe that upon a fair hearing of the evidence that the Court would find in favor of Defendants and against Plaintiff despite his allegations to the contrary" (Dkt. No. 13, ¶10).  These statements are simple assertions unsupported by specific facts or evidence which do not give rise to a meritorious defense.  *See Stephenson,* 524 F.3d at 914.  The Court finds that Lieutenant Baker and Sheriff Robinson fail to meet the standard for establishing a meritorious defense.

### C.      Prejudice

The defendant has the burden of proving that the plaintiff would not be prejudiced if the motion to set aside were granted.  *Sullivan,* 2010 WL 582790, at \*4.  In *Stephenson*, the court found that "delay alone, or the fact that the defaulting party would be permitted to defend on the merits, are insufficient grounds to establish the requisite prejudice to the plaintiff."  *Stephenson*, 524 F.3d at 915 (citing *Johnson*, 140 F.3d at 785).  For the court to set aside an entry of default, that action must prejudice the plaintiff "in a more concrete way, such as 'loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion.'" *Id.* (quoting *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir. 1990)(per curiam)).

Lieutenant Baker and Sheriff Robinson claim that Mr. Ault "would suffer no hardship or prejudice as a result of a Court order allowing the Defendants to file and answer and defend the allegations of Plaintiff's Complaint, if in fact the allegations of Plaintiff's Complaint are true and valid" (Dkt. No. 13, ¶ 12).  Lieutenant Baker and Sheriff Robinson offer no support for that allegation.  Mr. Ault claims he will suffer prejudice and hardship if the entry were to be set aside because "such a delay would result in a more difficult and less reliable discovery process, due to the passage of time and result this could have on the memories of eyewitnesses and those involved" (Dkt. No. 19).  Lieutenant Baker's and Sheriff Robinson's argument that Mr. Ault "would suffer no hardship or prejudice" fails to demonstrate that Mr. Ault would not be prejudiced by setting aside the entry of default.

After weighing all three factors, the Court elects not to set aside its entry of default as to Lieutenant Baker and Sheriff Robinson.  They have failed to show that their conduct in defaulting was not culpable, they did not present a meritorious defense, and they have failed to meet their burden of showing that Mr. Ault would not be prejudiced in setting aside the default.

###    III.    CAUSES OF ACTION

This Court construes comments of counsel at the hearing on default as raising the issue of whether the claims as alleged by Mr. Ault fail to state claims upon which relief can be granted and, therefore, should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Before moving to the issue of damages, this Court will analyze this issue.

"It is nearly axiomatic that when a default judgment is entered, facts alleged in the complaint may not be later contested." *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010) (citing *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010)). *See also Thomson v. Wooster*, 114 U.S. 104 (1885); *see also* Fed.R.Civ.P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."). However, "it remains for the [district] court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Id.* (quoting 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2688 at 63 (3d ed. 1998)). In his complaint, Mr. Ault alleges that "[r]elief is pursuant to 42 U.S.C.S. § 1983 and the Fourth and Eighth Amendments to the United States Constitution" (Dkt. No. 1, ¶ 1). Later, Mr. Ault claims that Lieutenant Baker subjected Mr. Ault to excessive force in violation of the "Fourth, Fifth, and/or Fourteenth Amendments to the United States Constitution" (Dkt. No. 1, ¶ 14). Mr. Ault alleges that Lieutenant Baker was deliberately indifferent to Mr. Ault's "obvious and serious medical condition" in violation of the "Fifth, Eighth, and/or Fourteenth Amendments to the United States Constitution" (Dkt. No. 1, ¶ 15). Mr. Ault alleges that Sheriff Robinson caused deprivation of Mr. Ault's constitutional rights by failing to train adequately Lieutenant Baker (Dkt. No. 1, ¶ 16). Mr. Ault also requests that this Court assume supplemental jurisdiction over his state law claims, arising under the

Arkansas Civil Rights Act of 1993 (Dkt. No. 1, ¶ 1).  Although Mr. Ault recites this, he makes no specific claim under the Arkansas Civil Rights Act of 1993.  He asserts only the following three claims under federal and state constitutional law.

### A.  Excessive Force

An "actual injury" must be shown to support an excessive force claim under the Fourth Amendment.  *Hanig v. Lee*, 415 F.3d. 822, 824 (8th Cir. 2005) (citing *Dawkins v. Graham*, 50 F.3d 532, 535 (8th Cir. 1995)).  Courts should consider the objective need for applying force, the relationship between the need and the degree of force used, the threat the officials reasonably perceived and other efforts used to diminish the severity of a forceful response, and the extent of the injury inflicted.  *Walker v. Bowersox*, 526 F.3d 1186, 1188–89 (8th Cir. 2008)) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).  The use of force against the plaintiff must have been necessary to further some legitimate institutional interest such as safety, security, or efficiency.  *Thomas v. Byrd*, No. 4:08cv03840 SWW/BD, 2009 WL 4546666 (E.D. Ark. Nov. 30, 2009).  Furthermore, the force used must not have exceeded the degree to which a reasonable officer would have believed necessary to achieve those goals. *Id.* (citing *Johnson–El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989)).  Force may be justified to make an inmate comply with a lawful prison regulation or order, but only if the inmate's noncompliance also poses a threat to other persons or to prison security. *Id.* (citing *Treats v. Morgan*, 308 F.3d 868, 875 (8th Cir. 2002)).

The right to be free from excessive force is included under the Fourth Amendment's prohibition against unreasonable seizures of the person.  *Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005); *Guite v. Wright*, 147 F.3d 747, 750 (8th Cir.1998) (citing *Graham v. Conner*, 490 U.S.  386, 394 (1989)).  A violation of that right will support a § 1983 action, but not every

push or shove by an officer violates the Fourth Amendment. *Id*. Rather, an officer's use of force is not excessive under the Fourth Amendment if it was "objectively reasonable under the particular circumstances." *Id*. *Greiner v. City of Champlin*, 27 F.3d 1346, 1354 (8th Cir. 1994). "'The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Id*. (quoting *Graham*, 490 U.S. at 396–97).

Mr. Ault claims that Lieutenant Baker used excessive force against him. Mr. Ault claims that, when he arrived at the holding cell, he stood with both arms out in complete submission. During this time, Mr. Ault and Lieutenant Baker exchanged verbal insults. Lieutenant Baker grabbed Mr. Ault by the throat and slammed him against the concrete wall approximately five feet behind Mr. Ault. Mr. Ault claims the back and possibly right side of his head hit first. Lieutenant Baker never removed his hand from Mr. Ault's throat. He slammed Mr. Ault up against the wall once more, and Mr. Ault claims his head received the brunt of the second impact. During this time, Mr. Ault kept his hands stretched out in complete submission. Lieutenant Baker then began to move Mr. Ault by his throat guiding him toward the holding cell. Lieutenant Baker then pushed Mr. Ault, by pushing on his throat. Mr. Ault's body hit the side door as he was thrown in and fell to the floor. Mr. Ault immediately felt pain in his right ear, as well as hearing loss. Mr. Ault asked Lieutenant Baker for medical assistance, but Lieutenant Baker denied his request, even though there was a nurse on duty that night in the jail. A couple of hours later Mr. Baker, "apparently unhappy with something [Mr.] Ault had said from behind his cell door, opened [Mr.] Ault's cell door and sprayed mace in [Mr.] Ault's face." (Dkt. No. 1, ¶ 9).

9

Mr. Ault went to the emergency that afternoon and was diagnosed as having suffered a ruptured eardrum in his right ear. (Dkt. No. 1, ¶ 11).  The medical records indicate that Mr. Ault suffered from "Tympanic Membrane Central Perforation."  Mr. Ault claims he continues to experience bouts of pain and diminished hearing in his right ear. (Dkt. No. 1, ¶ 12).

Based on these factual allegations, the Court finds that Mr. Ault has stated a claim for which relief can be granted.  The Court finds that, based on the facts alleged in Mr. Ault's complaint, the level of forced used by Lieutenant Baker was not necessary to further some legitimate institutional interest such as safety, security, or efficiency and that use of excessive force resulted in injury in fact to Mr Ault.

## B.      Serious Medical Needs

Mr. Ault brings this suit against Lieutenant Baker alleging that he was deliberately indifferent to Mr. Ault's serious medical needs in violation of the Fifth, Eighth, and/or Fourteenth Amendment to the United States Constitution and in violation of Article 2, §2, §8, and/or §9 of the Arkansas Constitution (Dkt. No. 1, ¶¶ 15, 19).

To support a claim for an Eighth Amendment violation, Mr. Ault must prove that Lieutenant Baker was deliberately indifferent to a serious medical need.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  However, even negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference.  *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).  Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation."  *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).  *See also Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth

Amendment). In addition, an inmate who complains that a delay in medical treatment constitutes a constitutional violation must provide "verifying medical evidence" in the record to establish the detrimental effect of the delay, in order to succeed on his claim. *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995) (overruled in part on other grounds) (examining this requirement at the summary judgment stage of the proceeding).

Mr. Ault alleges in his complaint that Lieutenant Baker was deliberately indifferent to his serious medical needs when he felt intense pain in his right ear, as well as hearing loss, after being shoved up against the wall twice and then shoved into the holding cell where his body collided with the side of the cell door as he was thrown in by Lieutenant Baker. Mr. Ault alleges that Lieutenant Baker refused Mr. Ault's request for medical assistance even though there was a nurse on duty that night (Dkt. No. 1, ¶ 8).

Based on these factual allegations, the Court finds that Mr. Ault has failed to state a claim upon which relief can be granted against Lieutenant Baker for deliberate indifference to his serious medical needs. Mr. Ault makes no allegation that the alleged delay in treatment had a detrimental effect. He provides no "verifying medical evidence" to establish the detrimental effect of the delay. Mr. Ault does not allege more than negligence and mere disagreement with treatment decisions and, therefore, is unable to state a claim for relief.

The Court acknowledges that Mr. Ault alleges that he went to the emergency room later that afternoon and was diagnosed as having suffered a ruptured eardrum in his right ear (Dkt. No. 1, ¶ 11). He also alleges that medical records from Jefferson Regional Medical Center indicate that Mr. Ault suffered a ruptured eardrum (Dkt. No. 1, ¶ 11). Mr. Ault does not allege, however, a detrimental effect of the delay of treatment. He also presents no "verifying medical evidence" to establish a detrimental effect, if such is required at this stage.

For these reasons, the Court finds that Mr. Ault's claims against Lieutenant Baker alleging that Lieutenant Baker was deliberately indifferent to Mr. Ault's serious medical needs in violation of the Fifth, Eighth, and/or Fourteenth Amendments to the United States Constitution and in violation of Article 2, §2, §8, and/or §9 of the Arkansas Constitution are dismissed without prejudice.

### C.   Failure to Train Adequately

Mr. Ault alleges that he was deprived of his constitutional rights due to Sheriff Gerald Robinson's failure to train adequately Lieutenant Baker.  He further alleges that such inadequate training and deficient training policies amount to deliberate indifference to the rights of persons who come in contact with officers and jailers at the Dub Brassell Detention Center and constitute deliberate indifference to the high risk of violation of the particular constitutional rights suffered by Mr. Ault (Dkt. No. 1, ¶¶16, 20).

Here, Mr. Ault names Lieutenant Baker and Sheriff Robinson in their official capacities. A suit against a municipal official in his official capacity is considered a suit against the municipality itself.  *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).  In *Monell v. Department of Social Services*, the Supreme Court held that a municipality is subject to liability under § 1983 only when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  436 U.S. 658, 690 (1978).  The Court explained that "although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 person, by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental custom even though such a custom has not received formal approval

through the body's official decisionmaking channels." *Id.* at 690-91.  A plaintiff must include allegations, references, or language by which one could infer the conduct alleged resulted from an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (citing *Doe v. Sch. Dist. of City of Norfolk,* 340 F.3d 605, 614 (8th Cir. 2003)).

The Eighth Circuit has "observed an important distinction between claims based on official policies and claims based on customs. Because an official policy speaks for itself about the intent of public officials, proof of a single act by a policymaker may be sufficient to support liability." *Jenkins v. County of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009).  "In contrast to the evidence required to establish an official policy, we have emphasized that a custom can be shown only by adducing evidence of a 'continuing, widespread, persistent pattern of unconstitutional misconduct.'" *Id.* at 634 (quoting *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999)). *See also Crawford v. Van Buren Cnty., Ark.*, 678 F.3d 666, 669 (8th Cir. 2012) (same).  A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible under state law for establishing final policy with respect to the subject matter in question. *Russell v. Hennepin County*, 420 F.3d 841, 847 (8th Cir. 2005) (internal quotations omitted).  On the other hand, "[a] municipal custom is a practice of municipal officials that is not authorized by written law, but which is so permanent and well-settled as to have the force of law." *Id.*  "Inaction or laxness can constitute government custom if it is permanent and well settled" and provided it is the moving force behind the constitutional violation. *Tilson v. Forrest City Police Department*, 28 F.3d 802, 807 (8th Cir. 1994) (citing *Monell*, 426 U.S. at 691)).

Mr. Ault alleges in his complaint that Sheriff Robinson "has final policymaking authority for the Dub Brassell Detention Center, and he is responsible for training all jailers and officers employed with the Dub Brassell Detention Center and for hiring/firing all jailers and officers employed with the Detention Center" (Dkt. No. 1, ¶ 5).

To the extent Mr. Ault intends to assert a claim against Sheriff Robinson in his official capacity for failure to monitor or supervise, this Court determines such a claim must be dismissed without prejudice based on the facts alleged.  There is no allegation that Lieutenant Baker has ever been accused of using excessive force before or that Sheriff Robinson had any idea that Lieutenant Baker would engage in the conduct he is alleged to have engaged in here. There is no evidence presented that Sheriff Robinson had knowledge of prior incidents of alleged excessive force and failed to take action.  To establish a county's liability based on its failure to prevent misconduct by employees, Mr. Ault must show that county officials had knowledge of prior incidents of misconduct and deliberately failed to take remedial action. *Harden ex. Rel Estate of Travis v. St. Louis County*, No. 404cv602CEJ, 2005 WL 1661505 (E.D. Mo. July 5, 2005).

Mr. Ault's primary claim is a failure-to-train claim.  To establish a failure-to-train claim, a plaintiff must prove that: (1) the municipality's training practices were inadequate; (2) the municipality was deliberately indifferent to the rights of others in adopting the procedures, such that the municipality's failure to train reflects its deliberate or conscious choice; and (3) the alleged deficiency in training practices actually caused the plaintiff's injury.  *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010).  Causation generally is a question of fact, unless the question is so free from doubt as to justify taking it from the fact finder.  *Id*. at 1000.

A plaintiff must show the municipality had notice.  A plaintiff must show "that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989).  Although *Canton* leaves open the possibility of single-incident liability, a pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train.  *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997).  This is so because "[p]olicymakers' 'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action – the 'deliberate indifference' – necessary to trigger municipal liability.'"  *Connick v. Thompson*, __ U.S. __, 131 S. Ct. 1350, 1360 (2011) (quoting *Bryan Cty.*, 520 U.S. at 407).  "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."  *Id.*

At the hearing on the motion for default, counsel for Lieutenant Baker and Sherriff Robinson suggested that *Connick v. Thompson* stands for the proposition that local government liability for failure to train cannot be based on a single incident.  The Supreme Court in *Connick* held that a prosecutor's *Brady* violation "does not fall within the narrow range of single-incident liability hypothesized in *Canton* as a possible exception to the pattern of violations necessary to prove deliberate indifference in § 1983 actions alleging failure to train."  *Connick*, 131 S. Ct. at 1366.  The Court is not persuaded that *Connick* eviscerates all § 1983 claims based on a single-incident theory of liability.  Indeed, the Supreme Court explicitly confined its holding in *Connick*

15

as follows: "*Canton*'s hypothesized single-incident liability does not, as a legal matter, encompass failure to train prosecutors in the *Brady* obligation." *Id.* at 1364. Because the Court is unaware of any controlling caselaw that reads *Connick* as broadly as defendants urge this Court to read it, the Court is not persuaded by defendants' argument that local government liability for failure to train cannot be based on a single incident.

This Court concludes that, even after the *Connick* decision, plaintiffs in a narrow range of circumstances can rely on a "single-incident" theory that the constitutional violation was the "obvious" consequence of inadequate training to demonstrate a municipality's "deliberate indifference" for purposes of a failure-to-train claim. To state a claim for failure to train rising to the level of deliberate indifference, Mr. Ault must allege that defendants were on notice that, absent additional specified training, it was "highly predictable" that officers would be confronted by situations the training was intended to address and would make incorrect decisions. *Id.* at 1365. In fact, Mr. Ault likely needs to allege that it was so predictable that failing to train officers amounted to conscious disregard for Mr. Ault's rights. *Id.*

The Court in *Connick* rejected the single-incident theory in that case in part because it involved an alleged *Brady* violation by prosecutors. The Court explained that: "[t]he reason why the *Canton* hypothetical [of single-incident] liability is inapplicable is that attorneys, unlike police officers, are equipped with the tools to find, interpret, and apply legal principles." *Id.* at 1364. This case deals with officers, not a lawyer.

The Court in *Connick* also noted that, unlike the single-incident example in *Canton* which assumed no knowledge at all of the constitutional limits at issue, there was a level of knowledge in *Connick* just not training about the particular scenario that related to the alleged violation in the case. The Court determined "[t]hat sort of nuance simply cannot support an inference of

deliberate indifference here. . . .  [F]ailure-to-train liability is concerned with the substance of the training, not the particular instructional format.  The statute does not provide plaintiffs or courts *carte blanche* to micromanage local governments throughout the United States."  *Id*. at 1363.  In other words, the narrow range of circumstances where a single-incident theory applies generally involves incidents arising from a total lack of training, not simply an assertion that a municipal employee was not trained about "the specific scenario related to the violation."  *Id.* at 1363-64.

  Mr. Ault alleges that Sheriff Gerald Robinson failed to adequately train Lieutenant Baker and that inadequate training and deficient training policies amounts to deliberate indifference to the rights of persons who come into contact with officer and jailers at the Dub Brassell Detention Center and deliberate indifference to the high risk of violation of the particular constitutional rights suffered by Mr. Ault (Dkt. No. 1, ¶ 16).

  Here, Mr. Ault does not allege notice on the part of Sheriff Robinson.  There is no allegation that Lieutenant Baker has ever been accused of using excessive force before or that Sheriff Robinson had any idea that Lieutenant Baker would engage in the conduct he is alleged to have engaged in here. To state a claim for failure to train rising to the level of deliberate indifference, Mr. Ault must allege that defendants were on notice that, absent additional specified training, it was "highly predictable" that officers would be confronted by situations the training was intended to address and would make incorrect decisions. *Connick*, 131 S. Ct. at 1366.  Mr. Ault has failed to demonstrate any notice on the part of Sheriff Robinson.  Without notice, Mr. Ault cannot allege that it was so predictable that failing to train officers amounted to conscious disregard for Mr. Ault's rights.  *Id.*

  For these reasons, the Court finds that Mr. Ault's claims against Sheriff Robinson alleging that Sheriff Robinson failed to train adequately Lieutenant Baker and that inadequate

training and deficient policies amounts to deliberate indifference to the rights of persons who come into contact with officers and jailers at the detention center and deliberate indifference to the high risk of violation of the particular constitutional rights suffered by Mr. Ault are dismissed without prejudice.

### III.    JURY TRIAL

Also before the Court is defendants' motion to continue, reschedule, or cancel the damages hearing (Dkt. No. 14).  Defendants pray that, if they are not given the opportunity to defend themselves against liability, they at least be able to defend themselves against the assessment of damages.  Defendants also request time to prepare a defense, conduct discovery, subpoena witnesses, and prepare for an assessment of damages.  "Defendants believe Rule 55(b) will allow for a jury trial on damages even if the entry of default is not set aside." (Dkt. No. 14, ¶4).

Rule 55 (b)(2) of the Federal Rules of Civil Procedure states that the court may conduct hearings or make referrals -- preserving any federal statutory right to a jury trial -- when, to enter or effectuate judgment, it needs to: conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.

Mr. Ault requested a jury trial in his complaint (Dkt. No. 1, ¶23).  Federal Rule of Civil Procedure 38(d) states that a proper demand may be withdrawn only if the parties consent.  "Several cases have held that the protection of Rule 38(d) is extended to the defendant after the entry of default, when Rule 55(b)(2) requires a determination of damages."  *Kormes v. Weis, Voisin & Co., Inc.*, 61 F.R.D. 608, 610 (E.D. Pa. 1974); *Bass v. Hoagland*, 172 F.2d 205 (5th Cir. 1949).  *See also Barber v. Turberville*, 218 F.2d 34, 47 (D.C. Cir. 1954) (determining that, when plaintiff demands a jury trial and subsequently has a default entered, "it is the better

practice, if not actually compelled, that the issue as to damages be submitted to the jury").  The

Third Circuit has addressed this issue:

> While the provisions of Rules 38 and 39, Federal Rules of Civil Procedure, concerning notice and consent in connection with requests for and waivers of jury trial are not expressly made applicable to default situations in which the issue of damages must be tried, we think the requirements of notice and consent stated in those rules should in fairness and logic be applied to cases of the present type. For even one who fails to contest liability on an unliquidated claim has a vital interest in the subsequent determination of damages and is entitled to be heard on that matter.

*Kormes*, 61 F.R.D. at 610 (quoting *Hutton v. Fisher*, 359 F.2d 913, 916 (3d Cir. 1966)).

In *Kormes*, the court determined it would "'in fairness and logic' apply  the consent

requirement of Rule 38(d) to the default situation of Rule 55(b)(2), and [would] in the exercise of

[its] discretion grant a jury trial to defendant. . . limited to the issue of damages." *Id.*  The

defendant in *Kormes* never consented to the withdrawal of the jury demand by the plaintiff.  In

this case, defendants have not consented to the withdrawal of the jury demand by Mr. Ault.

Therefore, the Court will exercise its discretion and grant a jury trial to defendants (Dkt. No. 14).

The jury trial will be limited to the issue of damages arising from Mr. Ault's excessive force

claim.

### IV.    CONCLUSION

Defendants' motion to set aside default is hereby denied (Dkt. No. 13).  Defendants'

motion to continue, reschedule, or cancel damages hearing is denied in part and granted in part

(Dkt. No. 14).  Mr. Ault's claims against Lieutenant Baker alleging that he was deliberately

indifferent to Mr. Ault's serious medical needs in violation of the Fifth, Eighth, and/ or

Fourteenth Amendments to the United States Constitution and in violation of Article 2, §2, §8,

and/or §9 of the Arkansas Constitution are dismissed without prejudice.  Mr. Ault's claim against

Sheriff Robinson in his official capacity for failure to monitor or supervise is dismissed without

prejudice. Mr. Ault's claim against Sheriff Robinson for failure to train is dismissed without prejudice.  Defendants' request for a jury trial on damages is granted solely as to the damages arising from Mr. Ault's excessive force claim (Dkt. No. 14)

SO ORDERED this the 27th day of March, 2013.


KRISTINE G. BAKER
UNITED STATES DISTRICT JUDGE